U.S. Department of Justice

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 DEC -9

CLERK'S OFFICE
AT BALTIMORE

BY _____

United States Attorney
District of Maryland
Northern Division

Rod J. Rosenstein
United States Attorney

Tonya Kelly Kowitz
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4913
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4913

September 26, 2011

Gary Proctor, Esquire
Law Office of Gary Proctor
8 East Mulberry Street
Baltimore, MD 21202

Re:   *United States v. Rafael Concepcion Feliciano, Jr.*
      Criminal No. TBD   CCB-11-0582

Dear Mr. Proctor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to Rafael Concepcion Feliciano, Jr., the defendant, by the United States Attorney's Office for the District of Maryland ("this Office"). If the defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by September 7, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The defendant agrees to waive Indictment and to plead guilty to a Criminal Information which will charge him with one count of Conspiracy to Commit Extortion Under Color of Official Right, in violation of 18 U.S.C. § 371, and one count of Extortion Under Color of Official Right, in violation of 18 U.S.C. § 1951(a). The defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

2.   The elements of the offenses to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Revised 11/5/09

Gary Proctor, Esquire
September 26, 2011
Page 2

### Count 1: Conspiracy to Commit Extortion Under Color of Official Right

a. the defendant, a public official, did conspire, confederate and agree, along with at least one other person;

b. the defendant obtained property or services not due him or his office;

c. the property or services were given, with the consent of the giver, to the defendant, who knew that the property was given because of the power of the defendant's position; and

d. interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

### Count 2: Extortion Under Color of Official Right

a. the defendant was a public official or held public office;

b. the defendant obtained property or services not due him or his office;

c. the property or services were given with the consent of the giver to the defendant, who knew that the property was given because of the power of the defendant's official position; and

d. interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree

#### Penalties

3. The maximum sentence provided by statute for the offenses to which the defendant is pleading guilty is as follows: Count 1 - Conspiracy: five years of imprisonment, $250,000 fine, and a term of supervised release of three years; Count Two - Extortion: twenty years of imprisonment, a fine of $250,0000 or twice the amount of the gross gain or loss derived from or caused by the offense, and a term of supervised release of three years. In addition, the defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution

Revised 11/5/09

Gary Proctor, Esquire
September 26, 2011
Page 3

pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. The defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

   b. If the defendant had pleaded not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.

   c. If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the defendant could be found guilty of any count. The jury would be instructed that the defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   d. If the defendant went to trial, the government would have the burden of proving the defendant guilty beyond a reasonable doubt. The defendant would have the right to confront and cross-examine the government's witnesses. The defendant would not have to present any defense witnesses or evidence whatsoever. If the defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Gary Proctor, Esquire
September 26, 2011
Page 4

  e. The defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

  f. If the defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  g. By pleading guilty, the defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  h. If the Court accepts the defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  i. By pleading guilty, the defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Gary Proctor, Esquire
September 26, 2011
Page 5

## Factual and Advisory Guidelines Stipulation

6. This Office and the defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   A. Pursuant to § 2X1.1(a), the guidelines calculation for a conspiracy is the same as for the substantive offense. Accordingly, pursuant to § 1B1.2(d), the applicable guideline for conspiracy to commit extortion is § 2C1.1.

### Count 1 - Conspiracy to Commit Extortion and Count 2 - Extortion

   B. Pursuant to § 2C1.1(a)(1), the base offense level is 14.

   C. Pursuant to § 2C1.1(b)(1), the offense level is increased by 2 levels, because the offense involved more than one bribe. (Subtotal = 16).

   D. Pursuant to § 2C1.1(b)(2), the base offense level is increased by 10 levels, because the loss was more than $120,000, but less than $200,000. (Subtotal = 26).

   E. Pursuant to § 3D1.2, conspiracy to commit extortion and the substantive count of extortion group.

   F. This Office does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. (TOTAL = 23).

7. The defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the defendant agree that with respect to the calculation of the

Gary Proctor, Esquire
September 26, 2011
Page 6

advisory guidelines range, no other offense characteristics, sentencing guidelines factors, or potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. Either party will be free to raise or dispute at sentencing any of the factors set forth in 18 U.S.C. § 3553(a). The defendant agrees that he will notify the Court, the United States Probation Officer and government counsel at least ten days in advance of sentencing of any of the facts or issues that he intends to raise under §3553(a).

### Obligations of the United States Attorney's Office

9.  At the time of sentencing, this Office will recommend a sentence within the advisory guidelines range determined by the Court at sentencing and an order of restitution in the full amount of the victims' losses caused by the acts that are the subject of the Information and for those caused by the Relevant Conduct. At the time of sentencing, this Office will move to dismiss the Indictment in CCB-11-0122 and the Complaint in 11-0662-PWG that are pending against him.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the defendant's background, character and conduct, including the conduct that is the subject of the Complaint that this Office has agreed to dismiss at sentencing.

### Restitution

11. The defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses caused by the acts that are the subject of the Information and for those caused by the Relevant Conduct, which is outlined in the attached statement of facts. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of those losses caused by the offense conduct and the relevant conduct, which will be decided by the Court at the sentencing. The defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

12. The defendant expressly authorizes the Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Gary Proctor, Esquire
September 26, 2011
Page 7

13. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

14. The defendant will promptly submit a completed financial statement to this Office in a form this Office prescribes and as it directs. The defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Forfeiture

15. (a) The defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of the defendant's illegal activities, specifically a money judgment in the amount of the total amount of the loss caused by the offense conduct and the relevant conduct decided by the Court at sentencing. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the defendant's restitution order.

(b) The defendant agrees to assist fully the United States in the forfeiture of the foregoing assets. The defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

(c) The defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to 18 U.S.C. § 981 or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

(d) The defendant agrees to identify all other assets and identify the sources of income used to obtain all other assets, including identifying all assets derived from or acquired as a result of, or used to facilitate the commission of, the crime charged in the Information. The United

Gary Proctor, Esquire
September 26, 2011
Page 8

States reserves the right to proceed against any remaining assets not identified in this agreement, including any property in which the defendant has any interest or control.

### Waiver of Appeal

16. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the defendant waive their rights to appeal as follows:

   a) The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the defendant's conviction;

   b) The defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 46 months of imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 57 months of imprisonment.

   c) Nothing in this agreement shall be construed to prevent the defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d) The defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

17. The defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his

Gary Proctor, Esquire
September 26, 2011
Page 9

conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

18.     The defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19.     This letter supersedes any prior understandings, promises, or conditions between this Office and the defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

Gary Proctor, Esquire
September 26, 2011
Page 10

    If the defendant fully accepts each and every term and condition of this agreement, please sign and have the defendant sign the original and return it to me promptly.

                Very truly yours,

                Rod J. Rosenstein
                United States Attorney

                By: _____
                Tonya Kelly Kowitz
                Kathleen O. Gavin
                Assistant United States Attorneys

    I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/22/11                 _____
Date                       Rafael Concepcion Feliciano, Jr..

    I am Rafael Concepcion Feliciano, Jr.'s attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10-27-11                 _____
Date                         Gary Proctor, Esquire

## ATTACHMENT A: STATEMENT OF FACTS

*The United States and defendant Rafael Concepcion Feliciano, Jr. stipulate and agree to the following facts that the United States would have proven beyond a reasonable doubt had this case proceeded to trial. They further stipulate and agree that these are not all of the facts that the United States would have proven had this matter gone to trial:*

### The Defendant - Rafael Concepcion Feliciano, Jr.

At all times relevant, the defendant, Rafael Concepcion Feliciano, Jr. ("Feliciano"), was employed as an active duty police officer with the Baltimore Police Department ("BPD"). After graduating from the BPD Academy and completing his field training, Feliciano was assigned to the Northeast District. Feliciano was then transferred to the District Operations Unit, and then transferred back to the Northeast District in about 2007. As a police officer, Feliciano was required to adhere to various BPD General Orders governing the performance of his official duties, including BPD General Order C-2 (Rules and Regulations). General Order C-2 specifically provided that "no member of the Department shall violate any Federal or State law, or City ordinance," (Rule 1, Section 18), and that "no compensation, reward, gift, or other consideration, shall be solicited or accepted by members without special permission of the Police Commissioner." (Rule 1, Section 30).

### Baltimore Police Department Motor Vehicle Accident and Towing Procedures

In response to a 911 call for a motor vehicle accident, BPD dispatch operators dispatched an officer to the accident scene. BPD officers responding to accident scenes were required to fill out a State of Maryland Motor Vehicle Accident Report (hereinafter "MAARS report") when the accident involved injury to a person or a disabled vehicle that was obstructing a roadway. The MAARS report listed the authoring officer's name, the vehicles and persons involved in the accident, and a narrative describing the accident. In addition, the MAARS report had a box for the officer responding to the accident to state by whom the vehicle was removed. BPD officers were required to submit the MAARS report to their immediate supervisor for processing and filing in a BPD database. The MAARS report was then forwarded to the Maryland State Police for filing as an official record for the State of Maryland.

BPD General Order I-2 (Towing Procedures), which was published April 23, 2010, reaffirmed the BPD's existing policies and procedures for the towing of civilian vehicles and was expressly designed to safeguard the public interest against fraud, deception and similar abuses. Pursuant to General Order I-2, when a BPD officer arrived at the scene of an accident, disability or emergency, the investigating officer at the scene was required to promptly determine if a disabled vehicle needed to be towed from a city street. That determination was based on whether the vehicle was impeding the free flow of traffic or movement of pedestrians or if an emergency existed.

If the vehicle had to be towed, the investigating officer was to request, via the Communications Section, a medallion towing vehicle to remove the vehicle. Medallion tow companies were towing companies that were under contract with the City of Baltimore to

provide towing services at accident scenes for the BPD. General Order I-2 specifically stated that non-medallion tow companies were not authorized to tow for the BPD.

In all non-emergency situations, the officer was required to permit the operator or owner of the car to contact a bona fide automobile or motor club of his choice, of which she or he was a member, an automobile insurance company with which he was insured, or a licensed towing vehicle. If the owner declined, was unable to do so, or the towing vehicle did not respond within twenty minutes, then the officer was required to call, via the Communications Section, a medallion towing company.

### The Charge

Hernan Alexis Moreno Mejia ("Moreno") and his brother, Edwin Javier Mejia ("Mejia"), owned and operated Majestic Auto Repair Shop LLC ("Majestic"), which was an automobile repair facility engaged in the business of providing both towing and automobile repair services. Majestic was located in Rosedale, Maryland and its business activities affected interstate commerce. Majestic was not an authorized medallion tow company.

At some point in 2008, BPD Officer Rodney Cintron introduced Feliciano to Moreno. Feliciano knew and understood that Cintron was being paid by Moreano to refer accident vehicles to Majestic. Feliciano and Moreno then agreed that Moreno would pay Feliciano cash for each car that he referred from accident scenes to Majestic. Moreno gave Majestic business cards to Feliciano and instructed Feliciano to tell the accident victims that Moreno would waive the deductible.

Feliciano then began referring cars to Majestic. While acting in his capacity as a BPD Officer, Feliciano would encounter an accident or a hit-and-run scene. Feliciano would contact Moreno or Mejia using his personal cellular telephone. Feliciano would provide Moreno or Mejia with relevant information about the vehicle involved in the accident, including the make and model of the vehicle and the amount of damage. Moreno or Mejia would come to the accident scene and arrange for the car to be driven or towed to Majestic. Moreno or Mejia then paid Feliciano $150, and eventually $300, for each vehicle that arrived at Majestic.

As to Count Two, on December 8, 2010, although Feliciano was not the officer dispatched to the accident scene, Feliciano responded to an automobile accident on Bowley's Lane in Baltimore, Maryland. Feliciano contacted Moreno to arrange for Majestic to tow the vehicle. Feliciano told the driver of the car that Majestic would waive the deductible. Moreno later paid Feliciano $300 cash for that referral.

Between January 2009 and August 2009, Moreno paid Feliciano in checks, drawn on the Majestic bank account, totaling $3,950. After August 2009, Moreno and Mejia paid Feliciano in cash. At all times, Feliciano knew that he was obtaining money, which was induced under color of official right, from Moreno and Mejia, with their consent, for having cars referred to Majestic.

In addition, although he never witnessed it, Feliciano also understood that Moreno and Mejia would create additional damage to certain vehicles in order to increase the vehicle

insurance claims, thereby increasing the net profit for Majestic as well as covering both the cash bribe payment to Feliciano and at least one other officer, and the payment of the vehicle owner's deductible. Feliciano also falsified certain MAARS reports by completing accident reports at Moreno's request in exchange for payment. Feliciano completed those false reports using information provided by Moreno, even though Feliciano had never been to the alleged accident scene nor had he personally witnessed the damage caused. Feliciano would leave the reports in the mailbox at Majestic, knowing that Moreno would then submit those reports to insurance companies for payment on false accident claims.

The total loss caused by Feliciano's conduct is more than $120,000, but less than $200,000.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

Agreed to this 22 day of October, 2011:

_____
Rafael Concepcion Feliciano, Jr.